TRIPP v. RINGSRUD, Secretary of State.

Sections 413, 414, Comp. Laws, require the librarian of the state to deliver one copy of Dakota Supreme Court Reports to each of certain courts and officers of the state and United States. Section 415 provides that, should the full compliance with the act exhaust the supply of the volumes therein specified, "the secretary is hereby authorized and directed to purchase a sufficient number of copies of the same heretofore published, or to be published, to comply with the provisions of this act." *Held,* that the act has a prospective as well as present operation, and applies to future volumes of the Reports to be issued, as well as those on hand, and that the object of Section 415, Comp. Laws, was to provide for a contingency; that is, should the supply on hand be exhausted before the persons and courts named had been supplied, they could be provided with them.

·(Syllabus by the Court. Opinion filed March 16, 1892.)

Appeal from circuit court, Union county. Hon. D. HANEY, Judge. Acting for and at the request of Hon. E. G. SMITH, judge of the First circuit.

Proceeding by *mandamus* to compel the secretary of state of South Dakota to purchase Volume 6 of the Decisions of the Supreme Court of Dakota. Defendant demurred. Judgment for plaintiff. Defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*Robert Dollard, Attorney General,* for appellant.

Appropriations made under the territorial laws were binding on the state and so regarded until the passage of the omnibus appropriation bill of 1891. State v. Hickman, 9 Mont. 370; 23 Pac. 740; State v. Kenney, 26 Pac. 196; Gilbert v. Moody, 25 Pac. 1092.

*Bartlett Tripp*, for respondent.

BENNETT, J.   The respondent was official reporter of the decisions of the supreme court of the Territory of Dakota.   As such reporter, he caused a volume of Reports, numbered and known as "Volume 6," to be printed and published in accordance with law.   After such publication; he applied to the appellant, as secretary of state of the State of South Dakota, and requested him to purchase a sufficient number of copies of said sixth volume of Reports, at the price named, in the law, to make the distribution required by Sections 413 and 414 of the Compiled Laws.   The appellant, as secretary of state, refused to make said purchase, and still refuses to do so.   The greater portion of the reportorial work on said volume had been done prior to the admission of South Dakota as a state into the Union. Upon the refusal of the secretary of state to make the purchase as requested, the respondent made application to the circuit court of Union county for an alternative writ of *madamus* to compel the appellant to make the purchase, which writ was granted.   Upon the return-day, the appellant demurred to the writ, for the reason that it does not state facts sufficient to cause the same to issue, which demurrer was overruled.   From this order of the court overruling the demurrer this appeal is taken.

The only question arising in this case is whether Chapter 154 of the Session Laws of 1887 of the legislature of the Territory of Dakota requires the secretary of state of the State of South Dakota to purchase of the reporter of the supreme court of the Territory of Dakota a sufficient number of volumes of said Reports to make the distribution provided for in Sections 1, 2, and 3 of that enactment, being Sections 413, 414, Comp. Laws.   Sections 1 and 2 of the law instruct the librarian of the territory to make a distribution by delivering one copy of the Dakota Supreme Court Reports, published by authority of the reporter of the supreme court, to certain courts and officers of both the territory and United States.   Section 4 provides that "should the full compliance with the requirements of Sections 1 and 2 of this act exhaust the supply of the volumes herein

specified, now in the possession of the secretary or librarian of the territory, and of volumes for the purchase of which provision has heretofore been made, the secretary is hereby authoized and directed to purchase a sufficient number of copies of the several volumes heretofore published, or to be published, to comply with the provisions of this act." The object of this law was to make a free distribution of the Dakota Supreme Court Reports to the officers and tribunals named in the enactment, for it explicitly says: "The librarian is hereby instructed to deliver one copy of each volume of the Dakota Supreme Court Reports." This direction has no reference to any specific volume, but "one copy of each volume" is to be delivered. Further on in Section 4 of the law it is provided that, if there are not sufficient numbers of copies of the several volumes heretofore published or to be published on hand to make the distribution, the secretary of state is directed to purchase a sufficient number to make the distribution. The act nowhere makes mention of any particular volumes, but the intention of the legislature must have been that it should apply, not only to the Reports on hand, but to all that should "be published" in the future. It is the custom and usage of all the states and territories to make free exchanges with each other as to their Supreme Court Reports, and to furnish to each of its public officers a copy of the same, and, no doubt, this custom was in the minds of the legislature when enacting this law for the distribution of these important Reports, and that it was to have a prospective operation as well a present one. All laws are presumably prospective in their meaning and operation, unless such meaning is controlled by the express language of the enactment. This is a general rule of construction. Justice COLE, in the case of Finney v. Ackerman, 21 Wis. 272, says: "For the rule is well settled that statutes are not to be construed as having a retrospective effect unless the intention of the legislature is clearly expressed that they shall so operate." And Justice PAINE, in the case of Seamans v. Carter, 15 Wis. 548, says: "That intention is not to be assumed from the mere fact that general language is used which might include past transactions

as well as future. Statutes are frequently drawn in such a manner, yet such general language is held to have been used in view of the established rule that statutes are construed as relating to future transactions, and not to past." Sections 1 and 2, if standing alone, could have no other than a prospective meaning, for it is a positive instruction to "deliver" the Reports as directed. Section 1 provides for exchanging with those states and territories that have or will exchange with us. Section 2 provides for furnishing counties, not only those which are organized, but counties hereafter organized. All the sections of the act, with the exception of the fourth, if standing by themselves, under all the rules of construction, could have a prospective operation only. They clearly apply to future volumes to be issued as well as to those on hand. But Section 4 is not altogether clear. The legislature, however, evidently did not intend to confine the operation of this section to the volumes of the Reports actually published. If it had, it would have mentioned them explicitly. The object of this section was to provide for a contingency; that is, if the Reports on hand should be exhausted before the persons or courts named in Sections 1 and 2 had been supplied, that they could be provided; and it was intended to meet this emergency, either as those on hand or those to be published. This construction makes the section harmonious with the other sections, and makes the act operative both as to the present and future. Under the facts stated and the law, we think the circuit court committed no error in issuing the writ, and its judgment is affirmed. All concur.